UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ADEYEMI ADEROHUNMU and
ALLIYAH RAWLINS, individually
and on behalf of all other persons
similarly situated,

        Plaintiffs,

        v.                  5:24-CV-731 (DNH/ML)

LORETTO HEALTH &
REHABILITATION CENTER,
And CPS RECRUITMENT, and
Any related entities,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CPS RECRUITMENT, and any
related entities,

        Cross-Claimant,

        v.

LORETTO HEALTH &
REHABILITATION CENTER,
and any related entities,

        Cross-Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

GATTUSO & CIOTOLI, PLLC               FRANK S. GATTUSO, ESQ.
Attorneys for Plaintiffs
The White House
7030 East Genesee Street
Fayetteville, NY 13066

VIRGINIA & AMBINDER LLP               ALANNA ROSE SAKOVITS, ESQ.
Attorneys for Plaintiffs              JENNY S. BREJT, ESQ.
40 Broad Street, Suite 7th Floor      LADONNA LUSHER, ESQ.
New York, NY 10004

BOND SCHOENECK & KING, PLLC           SUZANNE M. MESSER, ESQ.
Attorneys for Defendant Loretto       LEAH DAWIT, ESQ.
One Lincoln Center                    LIZA R. MAGLEY, ESQ.
Syracuse, NY 13202

HARRIS BEACH MURTHA                   SCOTT D. PIPER, ESQ.
    CULLINA, PLLC                     WILLIAM M.X. WOLFE, ESQ.
Attorneys for Defendant CPS
99 Garnsey Road
Pittsford, NY 14534

DAVID N. HURD
United States District Judge


**DECISION and ORDER**

## I.    INTRODUCTION

On May 31, 2024, named plaintiffs Adeyemi Aderohunmu ("Adero-hunmu") and Alliyah Rawlins ("Rawlins") (collectively "named plaintiffs"), certified nurse assistants, filed this putative class and collective action against defendant Loretto Health & Rehabilitation Center ("Loretto"), which operates

residential nursing homes and medical care services, alleging violations of the Fair Labor Standards Act and related state law.  Dkt. No. 1.

After Loretto answered the initial complaint, Dkt. No. 8, and an attempt at mediation failed, Dkt. No. 19, named plaintiffs filed a First Amended Complaint that, among other things, added as a named defendant CPS Recruitment ("CPS"), a medical staffing provider that hired and placed certain healthcare workers at Loretto's healthcare facilities.[1]  Dkt. No. 26.

On January 30, 2026, named plaintiffs moved to certify a class and collective action of similarly situated healthcare workers employed by Loretto and CPS (collectively "defendants") based on defendants' allegedly uniform policy and practice of auto-deducting meal breaks that plaintiffs were regularly required to work through in order to complete their job duties, resulting in unpaid wages and overtime and inaccurate wage statements.[2]  Dkt. No. 52.

The motion has been fully briefed, Dkt. Nos. 61, 62, 63, and will be considered on the basis of the submissions without oral argument.

---

[1]  Loretto answered the First Amended Complaint.  Dkt. No. 32.  CPS answered and asserted cross-claims against Loretto, Dkt. No. 37, which Loretto has answered, Dkt. No. 39.  The cross-claims are not part of this motion practice and will not be referenced except where necessary.

[2]  The parties have stipulated to the filing of plaintiffs' Second Amended Complaint to correct remove certain claims and correct the caption.  *See* Dkt. No. 52-26.  Accordingly, the Court will treat the Second Amended Complaint as the operative pleading for the purpose of this motion practice.

## II.    BACKGROUND

Aderohunmu lives in Cortland County, New York.  Second Am. Compl. ¶ 10.  He was employed by Loretto as a Certified Nurse Assistant from November 20, 2023 through May 22, 2024.  *Id.* ¶¶ 10, 27.  Rawlins lives in Onondaga County, New York.  *Id.* ¶ 11.  She was employed by Loretto and CPS as a Certified Nurse Assistant in January of 2023.  *Id.* ¶¶ 11, 29, 31.

Plaintiffs' Second Amended Complaint alleges that they and similarly situated healthcare workers employed by Loretto (or jointly employed by CPS) were paid hourly wages that had thirty-minute meal breaks automatically deducted from their paychecks even though they were regularly required to work through those breaks.  *See, e.g.*, Second Am. Compl. ¶¶ 18, 39, 56.  According to the Second Amended Complaint, these unpaid periods caused named plaintiffs and other similarly situated healthcare workers to perform work for defendants without receiving pay for all hours worked, including overtime compensation, in violation of the FLSA and related state law.  *See, e.g.*, *id.*

## III.    LEGAL STANDARDS

### A.  Class Actions

Federal Rule of Civil Procedure 23 governs representative litigation on behalf of absent parties.  First, the party seeking certification must demonstrate four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a).  The burden of proof for

each element is a preponderance of the evidence. *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Second, the movant must demonstrate that their class fits within one of the recognized "types of class actions," that is: (1) prosecuting separate actions would create a risk of (A) inconsistent results or (B) results that would hamper non-parties' interests; (2) the party opposing the class has acted on common grounds; and/or (3) common questions of law or fact predominate and a class action is the best way to resolve them. Fed. R. Civ. P. 23(b).

### B.  Collective Actions

The Fair Labor Standards Act permits workers to create a "collective action" by opting-in to wage-and-hour claims brought by similarly situated employees. 29 U.S.C. § 216(b). "The unique FLSA collective differs from a Rule 23 class because plaintiffs become members of the collective only after they affirmatively consent to join it." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (citation omitted). "In contrast to a class action, an FLSA collective action remains a mosaic of individual claims even after conditional certification." *Provencher v. Bimbo Foods Bakeries Distrib., LLC*, 175 F.4th 180, 188 (2d Cir. 2026).

## IV.    DISCUSSION

The FLSA "imposes minimum-wage and maximum-hour requirements on certain U.S. employers." *Perry v. City of N.Y.*, 78 F.4th 502, 512 (2d Cir.

2023).[3] For instance, the Act mandates that employees get paid a higher, over-time rate for working more than 40 hours in a single workweek. 29 U.S.C. § 207(a)(1). However, the FLSA does not define what counts as "work" or a "workweek." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 225 (2014). Instead, the FLSA defines the term "employment."

Under the FLSA, "employment" is "work" that is "suffered or permitted." 29 U.S.C. § 203(g) (cleaned up). As the Second Circuit has explained, "[i]f the employer suffers or permits the work—either by requiring it, knowing about it, or failing to exercise reasonable diligence to discover it—then it must compensate the employee, even if the employee failed to report the work and even if the employer did not know that the employee was working unpaid." *Perry*, 78 F.4th at 509.

"Because FLSA and [state law] claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the [state law] claims as a class action under the district court's supplemental jurisdiction." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir.

---

[3] Generally speaking, the same basic standards apply to FLSA and NYLL claims. *See, e.g.*, *Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106, 118 (2d Cir. 2013); *Diaz v. Rene French Cleaners, Inc.*, 2022 WL 4646866, at *4 (E.D.N.Y. Aug. 29, 2022) (Report & Recommendation) (recognizing that FLSA and NYLL standards are "closely aligned"), *adopted by* 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).

6

2020) (quoting *Shariar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 244 (2d Cir. 2011)).

Plaintiffs have done just that.  Because Rule 23's class certification mechanism imposes a more rigorous set of requirements than the FLSA's collective action tool, *see, e.g.*, *Scott*, 954 F.3d at 520, the Court begins its analysis with plaintiffs' motion to certify a Rule 23 class action based on claims under New York Labor Law ("NYLL").

## A.  NYLL Class Action

Plaintiffs' Second Amended Complaint asserts NYLL claims for unpaid wages and overtime (Second Cause of Action) and inaccurate wage statements (Third Cause of Action).  Plaintiffs seek to certify the following NYLL class under Rule 23:

> All current and former employees who worked at Loretto Health & Rehabilitation Center as Licensed Practical Nurses, Certified Nursing Assistants, and/or other personal care support at any time from **May 31, 2018,** through the date of final judgment (the "Putative Class" or "Putative Class Members").  Corporate officers, shareholders, directors, and administrative employees shall not be part of the proposed class.

Dkt. No. 52-27 at 10 (emphasis added).

Class certification is the exception, not the rule, so the party moving for class certification "must affirmatively demonstrate" compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  A plaintiff's burden

7

under Rule 23 is satisfied if he can prove that a class action is appropriate by a preponderance of the evidence. *See, e.g.*, *Teamsters Local 445 Freight Div. Pension, Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

First, a plaintiff's proof must survive a "rigorous analysis" of whether Rule 23(a)'s requirements have been satisfied. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). As noted *supra*, there are four requirements: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016).

Second, even if the four requirements of Rule 23(a) are satisfied, the plaintiff must prove that one of the three subcategories of permissible class actions under Rule 23(b) fit the particular case. Fed. R. Civ. P. 23(b). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (cleaned up).

### 1. Rule 23(a) - Numerosity

The first element of Rule 23(a) requires plaintiffs to demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As the Second Circuit has explained:

8

the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members.

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

"The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244–45 (2d Cir. 2007).

Plaintiffs have carried their burden on this element. Numerosity is typically presumed if the class would include more than forty members. *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). As plaintiffs point out in their moving brief, defendants' interrogatory responses establish that Loretto employed over 400 putative class members and CPS employed at least 44 putative class members. Dkt. No. 52-27 at 19 (citing records). Indeed, as plaintiffs point out in reply, defendants do not meaningfully contest this element in their opposition papers. *See* Dkt. No. 61; *see also* Dkt.

9

No. 63-3 at 10 n.2. Accordingly, plaintiffs have satisfied this element by a preponderance of the evidence.

### 2. Rule 23(a) - Commonality

The second element of Rule 23(a) requires plaintiffs to demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The Rule does not require all questions of law or fact to be common." *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 286 (S.D.N.Y. 2012). "Indeed, even a single common question will suffice." *Id*. (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358–59 (2011)).

"The common question must lend itself to 'classwide resolution' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sykes*, 285 F.R.D. at 286 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350). In other words, what matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. (emphasis in original).

Plaintiffs have carried their burden on this element. Plaintiffs' Second Amended Complaint alleges that defendants engaged in a common, unlawful policy or practice of failing to pay named plaintiffs and those similarly situated to them for all hours worked, including for overtime, by improperly auto-deducting at least thirty minutes from plaintiffs' wages each shift despite the fact that plaintiffs regularly worked through their meal breaks. Plaintiffs further

10

allege that defendants did nothing to record or ensure that plaintiffs received any meal breaks, and that defendants failed to provide accurate wage statement (*i.e.*, statements reflecting all of the hours plaintiffs worked).

Defendants characterize this theory of class commonality as "conclusory" and claim that plaintiffs' "proof is thin, inconsistent, or limited." Dkt. No. 61 at 20. But the Court finds that plaintiffs have supported their allegations of commonality with a strong showing of supporting proof: declarations by named plaintiffs and several putative class members, together with excerpts from defendants' policy documents and time and pay and time records. Dkt. No. 52-27 at 20 (cataloguing evidence).

Defendants go on to make a number of additional arguments that are either premature (because they go to the actual merits and might perhaps justify class decertification in the future) or based on an assumed premise (that just because the policy is not *per se* unlawful the policy is therefore not a violation).[4]

These arguments are all rejected. First off, "claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." *Espinoza v. 953 Assocs., LLC*, 280 F.R.D. 113, 127 (S.D.N.Y.

---

[4] Elsewhere, defendants argue that any class or collective should be limited to "8-hour CNAs who worked in Cunningham," one of defendants' buildings. Dkt. No. 61 at 29. That argument is rejected.

11

2011).  Indeed, these kind of cases "are about the most perfect questions for class treatment." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (finding predominance requirement satisfied).

For instance, defendants argue that it is not necessarily unlawful to have time automatically deducted from employees' pay for meal breaks.  Dkt. No. 61 at 21.  To be sure, a so-called "auto-deduct" policy might not *necessarily* be unlawful.  *See* Dkt. No. 61 at 20–22 (referencing Dkt. No. 61 at 15–16); *see also Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014) (collecting cases).  In fact, some courts in this circuit have held that "employers utilizing an automatic meal deduction policy may legally shift the burden to their employees to cancel the automatic meal deduction if they work through an unpaid meal." *Briceno v. USI Servs. Grp., Inc.*, 2012 WL 4511626, at \*6 (E.D.N.Y. Sept. 28, 2012).

The Court takes no position on whether that statement is correct as a legal matter under the governing law.  But even assuming that it is, that does not necessarily mean that defendants' allegedly common policy or practice could not—or did not—lead to class-wide wage-and-hour violations.  Plaintiffs have submitted evidence sufficient to establish for purposes of class certification that defendants knew, or had reason to know, that plaintiffs regularly worked through meal breaks without compensation.  Dkt. No. 63-3 at 7–10 (cataloguing supporting evidence).

In other words, "[t]he legal question common to the entire class is whether defendants' automatic meal break deduction policy is in compliance with the law."  *Meyers v. Crouse Health Sys., Inc.*, 274 F.R.D. 404, 418 (N.D.N.Y. 2011) (explaining this legal question subsumes a series of related fact disputes vis-à-vis knowledge and policy).  Accordingly, plaintiffs have satisfied this element by a preponderance of the evidence.

### 3.  Rule 23(a) - Typicality

The third element of Rule 23(a) requires plaintiffs to demonstrate that "the claims or defense of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability." *Stinson v. City of N.Y.*, 282 F.R.D. 360, 370 (S.D.N.Y. 2012) (cleaned up).

Upon review, plaintiffs have carried their burden on this element for substantially the same reasons set forth *supra* with regard to commonality. *Sykes*, 285 F.R.D. at 287 ("The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites.").

Even so, defendants argue that named plaintiffs' work experiences are "highly individualized" and "plainly atypical" and emphasize that the proposed class would encompass "employees working in two different buildings with

13

vastly different care needs, in two different positions with divergent daily tasks, and on different shifts, some of whom receive a paid meal break automatically." Dkt. No. 61 at 18, 22–24. According to defendants, "[n]othing in this record shows that these isolated, inconsistent, and [highly] individualized experiences of two employees that worked only 8-hour shifts as CNAs at [one of the locations] and who had disciplinary issues are typical of LPNs and CNAs who worked different shifts, on different floors or in a different [building], under different supervisors and with different jobs." *Id*. at 23–24.

This argument is rejected. Typicality "does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Gonzalez v. Hanover Ventures Marketplace, LLC*, 2024 WL 1157074, at *5 (S.D.N.Y. Mar. 18, 2024) (cleaned up) (explaining typicality is "not demanding" and does not "require that damages be identical among class members").

Plaintiffs have made this showing in their papers. As plaintiffs explain, the claims of the named plaintiffs and the putative class members "arise from the same unlawful schemes implemented by Defendants." Dkt. No. 52-27 at 24 (cataloguing support proof). They have offered proof that named plaintiffs and opt-in plaintiffs have "testified that they worked through most, if not all, of their meal breaks." Dkt. No. 63-3 at 12–13 (cataloguing additional

14

supporting proof).  Accordingly, plaintiffs have satisfied this element by a preponderance of the evidence.

### 4.  Rule 23(a) - Adequacy of Representation

The fourth element of Rule 23(a) requires plaintiffs to demonstrate that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "[T]he adequacy requirement is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of the other class members."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  "In addition, class counsel must be qualified, experienced and able to conduct the litigation."  *V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 576 (N.D.N.Y. 2017) (cleaned up).

This inquiry "serves to uncover conflicts of interest between the parties and the class they seek to represent."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  "Not every conflict, however, precludes a finding of adequacy."  *Sykes*, 285 F.R.D. at 287.  "The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental, and speculative conflict should be disregarded at the class certification stage."  *Id*. (citation omitted).

Plaintiffs have carried their burden on this element.  There is no indication at this point that named plaintiffs' interests have diverged from that of

the proposed class, all of whom have allegedly been harmed in substantially the same manner by the same alleged policy. And of course, proposed class counsel has substantial litigation experience. In response, defendants argue that plaintiffs suffer from "serious credibility concerns" and "disciplinary problems" that make them unsuitable representatives. Dkt. No. 61 at 24–26.

These arguments are rejected. First off, the Court does not buy defendants' argument that named plaintiffs' disciplinary histories are going to present the kind of "unique defenses" to this litigation that threaten to overcome the common questions of law and fact here, which are about defendants' policy of auto-deducting meal breaks that they knew or should have known their workers were working through. *See V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 576 (N.D.N.Y. 2017).

Second, Courts are generally loathe to disqualify proposed class representatives based on inaccurate or conflicting testimony. *See Carollo v. United Capital Corp.*, 528 F. Supp. 3d 37, 56 (N.D.N.Y. 2021). Defendants' showing is not enough to justify disqualification of the named plaintiffs. Accordingly, plaintiffs have satisfied this element by a preponderance of the evidence.

### 5. Rule 23(b) - Type of Class Action

Plaintiffs have also satisfied this requirement. They rely on Rule 23(b)(3), which requires them to show (a) that "the question of law or fact common to class members predominate over any questions affecting only

16

individuals members"; and (b) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Predominance

"As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (cleaned up). In short, the Rule "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.*

Measured against this standard, plaintiffs have carried their burden on this element. Although this inquiry is "more demanding" than the commonality requirement, *Comcast Corp.*, 569 U.S. at 34, predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Glatt*, 811 F.3d at 538 (cleaned up). That standard is met here. The individualized questions identified by defendants as justification to conclude otherwise largely go to damages, which are ordinarily not a

17

basis on which to defeat class certification. *See, e.g.*, *Roach*, 778 F.3d at 407–08.

### b. Superiority

In assessing this "superiority" question, Rule 23(b)(3) instructs courts to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D).

Upon review, these factors favor certification. Although defendants insist that liability "turns on highly individual employee-by-employee analysis" because the meal-break policy alone is not necessarily unlawful, Dkt. No. 61 at 27–28, courts routinely find that "a class action is superior where, as here potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by defendants." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (collecting cases).

### 6. Rule 23 & Ascertainability

Finally, courts have written a third, "implied requirement" into Rule 23: a party seeking class certification must demonstrate that the proposed class is

18

"ascertainable." *Sykes*, 285 F.R.D. at 287.  Under this additional element, "[a]n identifiable class exists of its members can be ascertained by reference to objective criteria." *Stinson*, 282 F.R.D. at 367.

Plaintiffs have also satisfied this requirement.  Dkt. No. 52-27 at 27.  The members of the class are readily identifiable pursuant to objective criteria, including but not limited to the records maintained by defendants.  In sum, plaintiffs have affirmatively demonstrate their compliance with the requirements for class certification.  Accordingly, plaintiff's motion for Rule 23 class certification will be granted.

## B.  FLSA Collective Action

Plaintiffs' Second Amended Complaint asserts an FLSA claim for unpaid overtime (First Cause of Action).  Plaintiffs seek to certify the following collective under the FLSA:

> All current and former employees who worked at Loretto Health & Rehabilitation Center as Licensed Practical Nurses, Certified Nursing Assistants, and/or other personal care support at any time from **January 17, 2022**, through the date of final judgment (the "Putative Class" or "Putative Class Members").  Corporate officers, shareholders, directors, and administrative employees shall not be part of the proposed class.

Dkt. No. 52-27 at 10 (emphasis added).

Under § 216(b), district courts "have discretion, in appropriate cases," to provide notice of a pending FLSA claim to potential plaintiffs so that they may

19

"opt in" to that claim. *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). The Second Circuit has endorsed a two-step process for certifying an FLSA collective action. *Id*.

"At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (cleaned up). The inquiry at this first step uses a "low standard of proof" and only requires a "modest factual showing" that the named plaintiffs and the potential opt-ins "were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555.

"At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Scott*, 954 F.3d at 515 (cleaned up). If the record shows that the opt-ins are not similarly situated, the case may be "de-certified," and the opt-in's claims dismissed without prejudice. *Myers*, 624 F.3d at 555.

The Second Circuit has cautioned that FLSA certification "not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial." *Scott*, 954 F.3d at 520. Accordingly,

20

courts must take care not to equate the requirements of § 216(b) with those of Rule 23. *Id.*

Upon review of the briefing, and for substantially the reasons discussed at length *supra*, plaintiffs' motion for conditional certification under the FLSA will be granted. Plaintiffs' evidentiary showing more than meets the "modest" evidentiary burden required at this stage of the case. Dkt. No. 52-27 at 31; Dkt. No. 63-3 at 6–10.

In reaching this conclusion, the Court rejects defendants' argument that a "modest plus" burden should apply where, as here, some fact discovery has taken place. *See* Dkt. No. 61 at 14–15. As plaintiffs point out, the Second Circuit has not endorsed this standard. *See Louis v. Ajay Glass & Mirror Co.*, 2026 WL 482589, at *3 (N.D.N.Y. Feb. 20, 2026) (explaining same). But even assuming otherwise, plaintiffs' showing is more than enough to satisfy the more demanding "modest plus" standard, too.

Plaintiffs' request for equitable tolling will also be granted. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015) (citation omitted).

However, courts routinely grant equitable tolling in the context of a collective action under the FLSA. *See, e.g., Cooke v. Frank Brunckhorst Co., LLC*,

722 F. Supp. 3d 127, 146–47 (E.D.N.Y. 2024) (acknowledging "ongoing trend in which courts have tolled the FLSA statute of limitations for potential opt-in plaintiffs"). The reason is simple: the FLSA is an *opt-in* regime, and the statute of limitations for opt-in plaintiffs runs until they join the case (it does not relate back to the filing of the named plaintiff's pleading, which means some opt-in plaintiffs who learn about the litigation too late will be barred by the limitations period). *See id.*

In sum, after considering the parties' briefing, and defendants' arguments against tolling, Dkt. No. 61-30–31, the Court agrees with plaintiffs that tolling is appropriate. Accordingly, the Court will equitably toll the FLSA statute of limitations in accordance with plaintiff's request: "from January 17, 2025 . . . until the close of any Court-ordered opt-in period." Dkt. No. 52-27 at 32.

## IV. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiffs' motion for class certification (Dkt. No. 52) and for leave to file the Second Amended Complaint is GRANTED;

2. Plaintiffs shall FILE and SERVE the Second Amended Complaint;

3. Defendants shall ANSWER the Second Amended Complaint within FOURTEEN DAYS of the date on which the pleading is filed and served;

22

4.  Plaintiffs' proposed notice and consent forms are AUTHORIZED to be published (Plaintiffs' Exhibits U and V); and

5.  Defendants shall PRODUCE a full and complete class list of all class members in accordance with the proposed publication order ("Plaintiffs' Exhibit W).

The Clerk of the Court is directed to terminate the pending motion.

IT IS SO ORDERED.


Dated:  August 5, 2026
        Utica, New York.

David N. Hurd
U.S. District Judge